# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Inez Phillips,                                                     Case No. 3:20-CV-01714

          Plaintiff,                              Judge James G. Carr

    v.

American Red Cross Blood Services,
Western Lake Erie Region,                        **ORDER**

          Defendant.

 

Plaintiff, Inez Phillips,[1] a former employee of  Defendant, American Red Cross Blood Services, Western Lake Erie Region ("Red Cross") brings employment-related claims against Defendant. Plaintiff asserts: 1) racial discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§  2000e *et seq*., 42 U.S.C. § 1981, and Ohio Revised Code (O.R.C.) § 4112.02(A); 2) retaliation under Title VII and O.R.C. § 4112.02(I); and 3) failure to accommodate a disability under O.R.C. § 4112.02(A).

Pending before me are the Defendant's Motion for Summary Judgment (Doc. 21), the Plaintiff's Response (Doc. 29) and the Defendant's Replies.[2] (Doc. 27; Doc. 30).

Because I find that Plaintiff failed to meet her initial burden of establishing a *prima facie* case for each claim, I grant the Defendant's Motion for Summary Judgment.

---

[1] Plaintiff Inez Phillips presently goes by the name, Inez Parkman.

[2] Subsequent to the filling of Defendant's Motion for Summary Judgment, Plaintiff filed a series of documents entitled, "Response to Investigation," (Docs. 23, 24, 25, 26) to which Defendant filed an original Reply Brief. (Doc. 27). On April 12, 2023, I issued an Order (Doc. 28) directing Plaintiff to refrain from email communications with my chambers and to file a written response to Defendant's Motion on or before May 15, 2023. Filing on the final deadline, Plaintiff submitted her response by filing "Motion for Trail" [sic Trial]. (Doc. 29). This prompted Defendant to file a second Reply (Doc. 30). <u>In granting summary judgment, Plaintiff's Motion for a Trial is **denied** as moot.</u>

## Background

The Red Cross employed Plaintiff from December 9, 2009, until her resignation on April 12, 2021. (Doc. 4; Doc. 20-1, pgID 260-63). Plaintiff was a Collection Supervisor in her last role with the Red Cross. *Id.* Collection Supervisors oversee mobile blood drives in person and manage Collection Technicians, who are the employees that draw the blood. (Doc. 20, pg ID 146).

Plaintiff reported to Greg Campbell, a Black[3] Collection Manager for Northwest Ohio. (Doc. 20-1, pgID 124-39). Campbell reported to Tracy Dean, a Caucasian Collection Director for Northern Ohio. (Doc. 4, pgID 20).

In April 2018, Plaintiff filed a complaint about Ashley Instone, a Caucasian Collection Supervisor, who repeated a story of a donor who used the "N-word." (Doc. 20-1, pgID 169-72, 302-3, 710). The Red Cross investigated the allegations against Instone and concluded that the "N-word" was used. (*Id.*). Defendant terminated Instone. (*Id.*).[4]

In August 2018, Dale Parker, a Black Business Agent for the Union representing Collection Technicians (employees reporting to Plaintiff), met with Campbell and Plaintiff. (Doc. 21, pgID 840-42; Doc. 20-1, pgID 174-75, 205-13). Parker asked for an investigation concerning a complaint that a Collection Technician under their supervision was stealing items from another Technician while working on mobile blood drives. *Id.* Parker later notified them he had received word that Plaintiff and Campbell shared this information with Plaintiff's friend, Justina Williams, and that she made threatening retaliatory statements towards her coworkers. (*Id.).* Parker expressed concerns that Plaintiff and Campbell would also retaliate against complaining employees. (*Id.*).

---

[3] Plaintiff indicated in her deposition that she considered herself Black rather than African American. (Doc 20-1, pgID 172-73).

[4] Upset with her treatment at the Red Cross and after Instone's termination, Plaintiff took a leave of absence from May 2018 until August 2018. (Doc 20-1, pgID 175).

Around the same time (August 2018), Devona Harris, a Black Collection Technician, was driving home from work when a wheel on her car came off, resulting in an accident. (Doc. 20-1, pgID 166, 202-3, 579). Harris reported to Campbell and eventually to the Human Resources Department her belief that someone loosened her lug nuts in the parking lot at work. (*Id*, pgID 579). These events arose after a rumor started that Harris reported others for stealing. (*Id.*). Harris eventually resigned from her position. (*Id.*). However, Defendant could never conclude anyone deliberately tampered with her car. (*Id.*, pgID 343).

In early September 2018, Dale Parker, remaining worried, took his concerns to senior leadership and Charletta Brown, Human Resources Manager at the Red Cross. (Doc. 20-1, pgID 557). Defendant launched an investigation into Parker's concerns. (*Id.*). From October 2018 to February 2019, Brown, Tracy Dean, and Lorelee Sensibaugh (Human Resources) interviewed the Toledo Collections Department. (Doc. 21, pgID 841-42; Doc. 20-1, pgID 557-58).

While concluding the allegations were "partially substantiated," they could issue no formal discipline because "no specific incident or violation could be corroborated." (*Id.*). The recommendation was to issue a documented counseling to Campbell and to place both Campbell and Plaintiff on action plans to address employee concerns raised during the investigation. (*Id.*).

Consequently, on February 13, 2019, Dean, placed Plaintiff on an Action (later termed Development) Plan ("Plan"). (Doc. 4, pgID 20; Doc. 20-1, pgID 557). The purpose of the Plan was to document areas where Plaintiff could make managerial improvements. (Doc. 20-1, pgID 571). The parties did not agree as to the significance of the Plan, and Plaintiff never completed it. (*Id.*, pgID 565-568).

Believing the investigation and resulting Plan to be "unjustified discipline," Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on  May 30, 2019.

(Doc. 21, pgID 843, Doc. 20-1, pgID 392-94). Finding no adverse action and no cause for discrimination, OCRC dismissed the charge on May 12, 2020. (*Id.*).

In March of 2020, the COVID-19 pandemic became a concern globally. In response, the Red Cross adopted a policy requiring all employees at blood drives to wear masks. (Doc 20-1, pgID 243-44; Doc. 4).

Plaintiff told Campbell, in April 2020, that she had a medical condition and that wearing a mask caused her anxiety. (*Id.*). Plaintiff gave Campbell a doctor's note about her inability to comply with the mandate. (Doc. 21, pgID 844, Doc. 20-1, pgID 467). The note stated that the Plaintiff, "should not have any direct patient contact until the Ohio Department of Health or the Center for Disease Control and Prevention has withdrawn the recommendation for face masking while in public. Patient is able to perform job duties remotely from home." (*Id.*).

Campbell initially allowed the Plaintiff to perform menial tasks, such as monitoring an on-call phone. (Doc. 21, pgID 844, Doc. 20-1 pgID 250-52). However, Defendant became concerned that Plaintiff could not perform the essential functions of her job without wearing a mask. (Doc. 21-pgID 844-45; Doc. 20-1, pgID 500-4). Plaintiff contended that she could perform her job duties remotely from home. (Doc. 4, pgID 21). In reality, she could not. Her role as a Collection Supervisor required direct oversight of Collection Technicians, who interface with the public while performing their blood collection duties.

On or about May 5, 2020, Plaintiff sought and was granted leave under the Family Medical Leave Act ("FMLA"). Concurrently, the Red Cross tried to determine if there was a reasonable accommodation for Plaintiff. (Doc. 4, pgID 21; Doc. 20-1, pgID 244).

In June 2020, Plaintiff informed Defendant she could not return to work until Red Cross lifted the mask mandate, or after twelve to eighteen months of "aggressive cognitive behavioral

therapy." (Doc. 20-1, pgID 324). Defendant granted Plaintiff a leave of absence as an accommodation. (*Id.*, pgID 503). Plaintiff's medical leave began on or about May 19, 2020 and continued to April 2021 when Plaintiff resigned. (*Id.*).

In August of 2020, Plaintiff filed a second charge of discrimination with the OCRC. (*Id.*, pgID 397-401). The OCRC again found no probable cause that the Red Cross violated anti-discrimination or anti-retaliation laws. (*Id.*).

Plaintiff filed this lawsuit on August 4, 2020 and amended her Complaint on August 11, 2020. (Doc. 1; Doc. 4). Subsequent to filing, in January 2021, Plaintiff moved from Ohio to Florida, while still on a leave of absence. (*Id.* pgID 123-25). On April 12, 2021, Plaintiff resigned from the Red Cross via email, stating returning to the Red Cross would not be in her best interest mentally. (*Id.*, pgID 521). She gave no further elaboration or explanation about her situation.

I now must determine whether Plaintiff raises sufficient facts to overcome summary judgment as to her state and federal claims of discrimination and retaliation.

## Standard of Review

Under Fed. R. Civ. Pro. 56, to obtain summary judgment, a defendant must show: (1) there is no genuine dispute of material facts, and (2) the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The movant must initially show the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. If this is demonstrated, the "burden shifts to the non-moving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## Discussion

Plaintiff alleges: 1) racial harassment and discrimination under Title VII, § 1981, and O.R.C. Chapter 4112 – Ohio's Anti-Discrimination Laws;[5] 2) retaliation under Title VII and O.R.C. Chapter 4112; and 3) failure to accommodate a disability under O.R.C. Chapter 4112. [6]

Title VII and O.R.C. Chapter 4112 prohibit employers from discriminating against "any individual with respect to …compensation, terms, conditions, or privileges of employment, because of such individual's race…." 42 U.S.C. § 2000e-2(a)(1); O.R.C. § 4112.02.

"Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for both race-based employment discrimination and retaliation." *Crane v. Mary Free Bed Rehab. Hosp.*, Case No. 15-1358, 634 Fed. Appx. 518, 521(6th Cir. 2015) (citing 42 U.S.C. § 1981); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001).

Mirroring Title VII's anti-retaliation provision, Ohio's anti-retaliation statute also makes it an unlawful discriminatory practice for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." O.R.C. § 4112.02(I); See also, 42 U.S.C. § 2000e-3(a).

## A. Hostile Work Environment

---

[5] The Sixth Circuit has held that "employment discrimination claims under 42 U.S.C. §1981 and Title VII can be analyzed under the same legal framework." *Noble v. Brinker Int'l Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). Similarly, federal case law governing Title VII actions is generally applicable to cases involving violations of O.R.C. Chapter 4112. *Shields v. Fed Exp. Customer Info Servcs.*, Inc., 499 Fed. App'x 473, 477 (6th Cir. 2012).

[6] Case law interpreting disability claims under O.R.C. § 4112.02 coincides the Americans with Disability Act ("ADA"). *Morris v. Mary Rutan Hosp.*, Case No. 2:18-cv-543, 2019 U.S. Dist. LEXIS 44838, at *5-6 (S.D. Ohio Mar, 19 2019) ("Courts have consistently held that Ohio's disability discrimination law 'entails the same legal analysis as that under the ADA…and therefore apply the same analytical framework.'").

Title VII protects employees "from a workplace that is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Daniels v. Pike Cnty. Comm'rs*, 706 F. App'x 281, 287 (6th Cir. 2017). Although Plaintiff frames her contentions under racial discrimination, retaliation, and disability discrimination, ultimately she asserts Defendant subjected her to a hostile work environment, thereby forcing her resignation.

To establish a *prima facie* case of hostile work environment under Title VII, a plaintiff must show: 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on protected class (here race); 4) the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) employer liability existed. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).

To rise to the level of "hostile," the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993).

Plaintiff does not allege a pattern of race related comments or conduct. Instead, she alleges isolated incidents.[7] As Defendant correctly points out, the only alleged race-based incident occurred in April 2018 when Plaintiff's co-worker, Instone, told Plaintiff about a donor who repeatedly used the "N-word" at a blood drive. Defendant investigated the allegation, determined that Instone used this word when rehashing a story, and fired her. (Doc. 21, pgID 852).

---

[7] There was speculation that a coworker removed another coworker's lug nuts on her tire causing her to get in an accident. However, there was no proof that it was race related or caused by a coworker. (Doc 20-1, pgID 343).

Defendant argues that the racial incident here is isolated, not extreme, and insufficient to create a race-based work environment. I agree. The law is clear: another employee's one off remark, even using bigoted language, is not enough to establish a hostile work environment. *Burton v. Dofasco Tubular Prods.*, Case No. 1:06-cv-2466, 2007 U.S. Dist. LEXIS 65918, *20-23 (N.D. Ohio Sep. 6, 2007). (holding three race-related incidents insufficient).

Furthermore, courts can only hold employers liable for a coworker's hostile work environment claims where the employer "knew or should have known of the harassment, and failed to take prompt and appropriate remedial action." *Theus v. Glaxosmithkline*, Case No. 10-5649, 452 Fed. Appx. 596, 600-1 (6th Cir. 2011) (internal quotations omitted). In this case, Defendant took immediate remedial action by investigating Plaintiff's complaint about Instone and by terminating the offending employee.

Plaintiff further alleges Defendant subjected her to a hostile environment by unnecessarily scrutinizing her work, investigating claims against her based on "false allegations," and ultimately placing her on a (performance) Plan. (Doc. 4, pgID 20). Plaintiff's supervisor, Campbell, was subjected to the same investigation. Both were put on Plans. Campbell was issued a documented corrective counseling, while Plaintiff was not. There is simply no evidence to suggest the action Defendant took were anything more than warranted employment actions.

I therefore conclude that Defendant is entitled to summary judgment on the Plaintiff's hostile work environment claims.

### B. Title VII and ORC - Racial Discrimination, Retaliation, and Disability

I now turn to address Plaintiff's racial discrimination, retaliation, and failure to accommodate disability contentions.

### i. Racial Discrimination

Plaintiff argues that Defendant exhibited racial discrimination when handling "similarly situated Caucasian individuals" having "more lenient polic[ies] and were not subjected to investigation or Development Plans" resulting in "intentional[] discriminat[ion] against" the Plaintiff "on the basis of her race." (Doc 4).

In an employment discrimination case, a plaintiff must present "either direct or circumstantial evidence that would allow an inference of discriminatory intent." *Ross v. Pfizer, Inc.*, 375 F. App'x. 450, 453 (6th Cir. 2010). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

In this case, the evidence of an isolated racial comment is insufficient to establish direct evidence of an alleged constructive discharge due to race. So, to establish a race-based claim under federal or state laws, Plaintiff must first prove a *prima facie* case of discrimination by demonstrating: (1) she is part of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, (1973); *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019) (internal quotations omitted).

Once an employee establishes a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. *Redlin, supra,* 921 F.3d at 606 (6th Cir. 2019) (internal quotations omitted). If the employer does so, the burden shifts again, and the employee "must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination." *Id.*

"The key question [here, as in many employment discrimination cases] is whether the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Crane v. Mary Free Bed Rehab. Hosp.*, *supra*, 634 Fed. Appx. at 522; *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 253 (1981).

Plaintiff argues placing her on a Plan was an adverse action. However - as Defendant points out - as a matter of law, an employer's internal investigation or performance improvement plan is not an adverse employment action. *Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006). As Defendant explained to Plaintiff in an email, the Plan was a means for the Red Cross to aid her in developing better supervisory skills. (Doc 20-1, pgID 572). It was not a disciplinary measure.

Moreover, Plaintiff fails to demonstrate she was treated less favorably that someone outside the protected class.[8] For a non-protected employee to be "similarly situated," they must be similar "in all of the relevant respects to an employee of a different race who was treated better." *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (internal quotations and citations omitted). "Relevant factors can include whether the employees: '(1) engaged in the same conduct, (2) dealt with the same supervisor, and (3) were subject to the same standards.'" *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff's failure to establish comparators is consistent with the plaintiff in *Becker v. Elmwood Local Sch.* Dist., No. 3:10 CV 2487, 2012 U.S. Dist. LEXIS 732, 2012 WL 13569 (N.D. Ohio Jan. 4, 2012) (Katz, J.) where the employee failed

---

[8] Plaintiff did name Caucasian comparators in the OCRC charge she filed in May 2019. (Doc 20-1, pgID 394). She did not, however, provide evidence of what the comparators did that would trigger the same sort of action to which Defendant subjected Plaintiff. She simply alleged they were "treated to a more lenient policy and have not been placed on a Development Plan." *Id.*

"to offer any evidence of employees who had behavioral and professionalism issues of comparable seriousness." *Id.* at 26-27.

The parties do not dispute that Plaintiff is a Black woman, who was qualified for her job. However, Plaintiff has failed to meet the *prima facie* elements, so the analysis ends there. Plaintiff cannot demonstrate she suffered an adverse employment action. She also failed to show that Defendant treated a similarly situated Caucasian employee more favorably than her. Therefore, Defendant is entitled to summary judgment on Plaintiff's claims of racial discrimination.

### ii.    Retaliation

Both Title VII and O.R.C. Chapter 4112 specifically prohibit employers from retaliating against an employee because that individual "opposed any practice" made unlawful by anti-discrimination laws or "made a charge, testified, assisted, or participated in" a discrimination proceeding or investigation. *Watson v. City of Cleveland*, 202 Fed. Appx. 844, 855 (6th Cir. 2006); 42 U.S.C. § 2000e-3(a); O.R.C. § 4112.02(I).

Plaintiff claims Defendant retaliated against her for filing an internal complaint, which constitutes opposition to alleged discrimination. (Doc. 4). A *prima facie* case for retaliation requires evidence that: (1) Plaintiff engaged in an activity that is protected under federal and state anti-discrimination laws (opposition or participation); (2) Defendant was aware of the protected activity; (3) Plaintiff suffered an adverse action; and (4) a but for causal connection exists between the protected activity and materially adverse action. *Wheeler v. Miam Valley Career Tech. Ctr.*, No. 22-3315, 2023 SL 142266 at*2 (6th Cir. Jan. 10, 2023) (citing *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

11

If a plaintiff can make out a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the termination. *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 236 (6th Cir. 2017). The burden shifts again, and the plaintiff then must show that the reason that the defendant articulates is actually pretext. *Id.* at 236.

Defendant argued that Plaintiff failed to establish her *prima facie* case because she neither suffered an adverse employment action nor showed a but for causal connection between the protected activity and adverse action. (Doc. 21, pgID 17). I agree. There is no evidence that Plaintiff's complaint, which led to the termination of Instone, was the impetus for any action Defendant took. In fact, it was the complaint Parker lodged about Plaintiff which led to Defendant placing her on the Plan. (Doc. 21-1, pgID 557). Moreover, as I discuss in further detail below, I do not find Plaintiff was constructively discharged or otherwise adversely harmed. Therefore, Plaintiff's retaliation claim fails, and Defendant is entitled to summary judgment.

### iii.    Failure to Accommodate Disability

It is illegal under state and federal laws for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013); O.R.C. § 4112.02(A). Included within the realm of discrimination is an employer's failure to provide reasonable accommodations to qualified disabled persons.

To prove a claim of failure to accommodate, Plaintiff has the burden to show that (1) she is disabled within the meaning of the ADA and that (2) she is "otherwise qualified" to perform essential job functions. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)).

Defendant correctly points out that "an employee is deemed qualified only if she can perform all of the essential functions of her job, whether [reasonably] accommodated or not."

*Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017) (citing 42 U.S.C. § 12111(8)). "Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (quoting 29 C.F.R. § 1630.2(n)(1)).

The world changed in March 2020 when the COVID-19 pandemic started. Therefore, the Red Cross adopted a new policy requiring Collection Supervisors and other staff attending and working at mobile blood drives to wear protective masks. (Doc. 4).

Plaintiff's job during this time required her to manage and supervise mobile blood drives on site. (Doc. 20, pg ID 146). This essential and primary job function required wearing a mask. (Doc. 20-1, pg ID 464-65). Given the nature of Plaintiffs' work, there was no alternative job that she could have done without being masked.

However, in June of 2020, Plaintiff informed the Red Cross that she would not return to work until they lifted the mask requirement or after twelve to eighteen months of "aggressive cognitive behavioral therapy." (Doc. 20-1, pgID 132-144; Doc. 20-2).[9]

It is clear to me that Plaintiff could not perform her actual job with or without a reasonable accommodation. Therefore, she is not a "qualified individual" with a disability. However, assuming she was a qualified disabled person, When the Red Cross learned that Plaintiff was not performing the essential functions of her job, they worked with her to see what, if any, reasonable accommodations might enable her to perform those functions. (Doc. 20-1). Ultimately, Plaintiff chose to resign. I therefore grant summary judgment for Defendant on Plaintiff's disability claims.

### C. Constructive Discharge

---

[9] I take judicial notice that the CDC lifted the mask mandate on April 18, 2022. *Order: Wearing of Face Masks While on Conveyances and at Transportation Hubs*, Ctrs. for Disease Control & Prevention (Apr. 18, 2022), https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html. The CDC's action occurred approximately eleven months after the Plaintiff resigned from the Red Cross.

Plaintiff's main contention is that her working conditions compelled her to leave her job with the Red Cross. *Watson*, *supra,* 202 F. Appx. at 856. Under discrimination laws, an employee can prevail on a claim of constructive discharge only "if the employer engaged in conduct that forced the employee to quit." *Id.* "[T]he employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit…" *Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1080 (6th Cir. 1999).

The Sixth Circuit has adopted seven factors to aid in the determination of whether the employer created working conditions that a reasonable person would find intolerable: "(1) demotion; (2) salary reduction; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee to resign; or (7) offers of early retirement or continued employment on less favorable terms." *Logan v. Denny's Inc.,* 259 F.3d 558, 569 (6th Cir. 2001) (quoting *Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000)).

Defendant did not subject Plaintiff to any of these actions. The Red Cross neither created working conditions that were so intolerable to a reasonable person nor intended to force Plaintiff to resign. As Defendant correctly points out, "hurt feelings are not enough to create a case of constructive discharge." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002). Based on facts undisputed before me, the Red Cross did not constructively discharge Plaintiff. She resigned of her own accord, nearly five months after she moved to Florida and almost a year after she started her 2020 leave. This solidifies my granting of summary judgment as to all claims.

## Conclusion

Plaintiff resigned. Nothing in the evidence shows that any action the Red Cross took subjected Plaintiff to a hostile environment or compelled her to quit. In addition, I find Plaintiff

14

failed to prove her claims of discrimination, retaliation, and disability. Accordingly, I find that Plaintiff has not met her burden of establishing a violation of Title VII, 42 U.S.C. §1981, or O.R.C. Chapter 4112, and Defendant is entitled to judgment as a matter of law.

For the foregoing reasons, it is hereby ORDERED THAT: Defendant's Motion for Summary Judgment (Doc. 21) be, and the same hereby is, **granted**. Plaintiff's Motion for a Trial (Doc. 29) is therefore, **denied as moot.**

So Ordered.

<u>James G. Carr</u>
Sr. U.S. District Judge